**Opinion filed July 2, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-25-00018-CR

_____

## TERRANCE MONTE LEWIS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 118th District Court**
**Howard County, Texas**
**Trial Court Cause No. 16810**

## M E M O R A N D U M   O P I N I O N

A grand jury indicted Appellant, Terrance Monte Lewis, for the murder of Neziah Xavier Turner. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (West Supp. 2025). The jury found Appellant guilty of the charged offense, found both enhancement allegations to be "true," and assessed his punishment at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced him accordingly.

In two issues, Appellant contends that: (1) the evidence does not support his conviction; and (2) the trial court erred when it prematurely assessed a time payment fee. We modify and affirm the trial court's judgment.

## I. *Factual Background*

On August 28, 2023, Appellant, Turner, and Mobey Lewis traveled from Big Spring to the Midland-Odessa area to purchase drugs; they drove there in a gray-silver Toyota Prius that was owned by Turner's girlfriend, Sidney Patterson. After they returned to Big Spring that afternoon, at some point the Prius struck a tree in the 100 block of Cottonwood Street. Thereafter, several people were seen running away from the Prius.

John Phillip Shober testified that he was inside his camper when he heard a couple of gunshots and then saw a gray Toyota Prius drive by and "wreck[] into the neighbor's yard." Three black males exited the Prius; one of them was a "bigger guy . . . kind of heavyset" and he was wearing a red shirt. Shober testified that he saw another black male run by the front of his camper in a "dead sprint" because he was being chased by others. After that, he heard screaming and shouting, "I'm gonna get you, m----------r. I'm gonna get you, n----r. I'm gonna get you." As the group ran toward land owned by Jerry Edmondson, Shober heard another gunshot.

Rose Stanhope was sitting in her car at her residence, located at 108 Carey Street, when a "young man" wearing a black hoodie approached her and asked for a "ride." The "young man" appeared to be nervous. Stanhope obliged and drove him to where the Prius was located.

Katherine Cheyenne Rawls witnessed the Prius crash into the tree and saw a person exit the vehicle before it crashed. Shortly thereafter, a black male wearing a white muscle shirt ran up to the Prius, reached through an open window, removed a bag, and then ran away. After Appellant was arrested, a search warrant for the Prius

was executed, and a .22 caliber casing was recovered from the driver's side floorboard.

Grace Windham testified that she was sitting on her back patio when a black male, who she described as "a little heavier set" and wearing a white shirt and red shorts, entered her property. According to Windham, this person was "[h]eavier" than Appellant. A .22 caliber handgun was later found hidden inside a tire outside of her home.

At the time, Brandee Leann Castillo was renting the home located at 100 Cottonwood Street. Castillo testified that after the Prius struck the tree, Appellant ran to her home, went inside, and asked for a ride because he needed to "get away." Appellant was wearing a white muscle shirt. He later ran away.

Officer Kevin Barker with the Big Spring Police Department received a dispatch for a "shots-fired call" and drove to the neighborhood where the Prius had crashed into the tree. Upon his arrival, he noticed several people run away from the Prius, across a field, and into a house. According to Officer Barker, a neighbor saw Appellant reach into the Prius, purportedly to retrieve something, and run away.

Officer Barker testified that Appellant and a female ran into Castillo's home; Appellant was wearing a white shirt and holding a black hoodie. Officer Barker also observed that a different male and female were in the bed of a pickup that was parked in front of Castillo's residence, and another male and female were inside the pickup. Officer Barker approached Castillo's residence and saw Appellant "peeking around the corner." When he walked to the back of the residence, Appellant was no longer there.

Alfonso Alonzo, a FedEx driver and former law enforcement officer, saw a person wearing a white shirt running away and "looking back" as he ran; he told Officer Barker that a black male wearing a white tank top was "headed that way." Appellant was later seen jumping into a gray GMC Yukon while holding a black

3

hoodie. Lyndell Knox, the owner of the Yukon, testified that Appellant told him to "[d]rive, just drive." Appellant was later apprehended, and a black hoodie was recovered from the Yukon.

The next day, Turner's body was found by Edmondson behind a travel trailer on his property. A 9mm casing was found next to Turner's body. Dr. Thomas Parsons, a forensic pathologist, performed Turner's autopsy and concluded that Turner's death was caused by three gunshot wounds—one to his upper back, one to the back of his right shoulder that penetrated one of his lungs, and the other entered through his right ear and transected his brain stem; it was also determined that the three gunshot wounds were caused by two different caliber weapons. The wounds to Turner's upper back and right shoulder were from a small caliber weapon—likely a .22 caliber—while his head wound was caused by a medium-sized caliber weapon—likely a 9mm firearm.

A search warrant for Castillo's residence was executed and a 9mm Springfield XD firearm was recovered inside her home. A black bag with the Springfield manufacturer's logo on it was found in Castillo's home; the 9mm firearm and magazines were inside the bag. A different firearm was also found hidden in a recliner.

Darrell Morgan, a firearm and toolmark examiner with the Texas Department of Public Safety (DPS), determined that the 9mm casing found near Turner's body had been fired from the 9mm firearm that was recovered from Castillo's home. Forensic analyses were performed by Sarah Hall, Marcos Rivera, Ann Zischkau, and Jason White, forensic scientists with DPS. Because blood stains were observed on the 9mm firearm, the blood stains and the firearm were swabbed by Zischkau and later tested by White for DNA profile identification and analysis, the results of which indicated that Appellant was a possible contributor to the DNA profile found on the 9mm firearm, and Mobey was excluded as a contributor. DNA analysis further

4

indicated that Appellant and Turner were at some point near the 9mm firearm. Forensic analyses also confirmed the presence of Turner's blood and gunshot primer residue particles on the black hoodie, which indicated that the hoodie had been near a firearm when it was discharged or contacted a surface that contained gunshot primer residue particles.

Law enforcement subpoenaed Appellant's cell phone records and reviewed the "jail calls" made by Appellant while he was confined in the Howard County and Garza County jails after his arrest. Detective Chase Clanton with the Big Spring Police Department listened to the calls and testified that Appellant called Mobey and asked him about the firearms that were used in the murder.

## II. *Sufficiency of the Evidence*

In his first issue, Appellant contends that the evidence is legally insufficient to support his conviction. Specifically, Appellant contends that the evidence of identity is lacking and does not show that he was the person who shot Turner.

### A. *Standard of Review*

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Garcia v. State*, 667 S.W.3d 756, 761 (Tex. Crim. App. 2023); *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all the evidence admitted at trial, including evidence that may have been

improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Lee v. State*, 676 S.W.3d 912, 915 (Tex. App.—Eastland 2023, no pet.). We defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007); *Garcia*, 667 S.W.3d at 762; *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. This deference accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Garcia*, 667 S.W.3d at 761; *Zuniga*, 551 S.W.3d at 732, *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Garcia*, 667 S.W.3d at 762; *Winfrey*, 393 S.W.3d at 768; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Garcia*, 667 S.W.3d at 762; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Because the standard of review is the same, we treat direct and circumstantial evidence equally. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13; *Ruiz v. State*, 631 S.W.3d 841, 851 (Tex. App.—Eastland 2021, pet. ref'd). It is not necessary that the evidence directly proves the defendant's guilt. Rather, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can, without more, be sufficient to establish his guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13); *Lee*, 676 S.W.3d at 915. A guilty verdict does not require that

every fact must directly and independently prove a defendant's guilt if the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Therefore, in evaluating the sufficiency of the evidence, we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

B. *Analysis*

As relevant to this appeal, a person commits the offense of murder if he intentionally or knowingly causes the death of an individual. PENAL § 19.02(b)(1). Because identity is an essential element of any criminal offense, the State must prove beyond a reasonable doubt that the defendant is the person who committed, or was a participant in the commission of, the charged offense. *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984); *see Ruiz*, 631 S.W.3d at 850–52 (identity is an essential element of murder that must be proved beyond a reasonable doubt). In this case, Appellant asserts that the evidence of identity that allegedly connects him to the murder is, at best, circumstantial. However, identity may be proven by direct *or* circumstantial evidence. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986).

Although not alleged in the indictment, the trial court's charge allowed the jury to convict Appellant of murder either as the primary actor or a party with Mobey. "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." PENAL § 7.01(a) (West 2021); *see Adames v. State*, 353 S.W.3d 854, 862 (Tex. Crim. App. 2011). A person is also criminally responsible for an offense that is committed by the conduct of another if, acting with the intent to promote or assist in the commission of the offense, he solicits, encourages, directs,

7

aids, or attempts to aid the other person to commit the offense. PENAL § 7.02(a)(2); *see Adames*, 353 S.W.3d at 862.

"Mere presence at the scene of a crime, or even flight from the scene, without more, is insufficient to support a conviction as a party to the offense." *Rodriguez v. State*, 521 S.W.3d 822, 828 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012)). "However, flight from the scene together with additional evidence showing a mutual understanding and common design to commit the offense may be sufficient to support a guilty verdict." *Padilla v. State*, 698 S.W.3d 589, 595 (Tex. App.—Houston [14th Dist.] 2024, pet. ref'd) (citing *Gross*, 380 S.W.3d at 186); *see Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007) ("Evidence of flight evinces a consciousness of guilt." (citing *Fentis v. State*, 582 S.W.2d 779, 780–81 (Tex. Crim. App. 1976))); *see also McDaniel v. State*, 698 S.W.3d 625, 641 (Tex. App.—Eastland 2024, pet. ref'd) (flight is a circumstance from which one may draw an inference of guilt) (citing *Devoe v. State*, 354 S.W.3d 457, 470 (Tex. Crim. App. 2011)).

To establish a defendant's liability as a party, the State must prove that, in addition to the primary actor's illegal conduct, the defendant, "harbored the specific intent to promote or assist [in] the commission of the offense." *Rodriguez*, 521 S.W.3d at 828 (quoting *Barnes v. State*, 62 S.W.3d 288, 296 (Tex. App.—Austin 2001, pet. ref'd)). For criminal liability to attach, the defendant must know that he was assisting in the commission of the offense. *Id.* In determining whether a defendant is a party to an offense we may consider events that occur before, during, and after the commission of the offense. *Gross*, 380 S.W.3d at 186.

The record shows that the State presented an abundance of evidence, some of which or taken together, could arguably be characterized as circumstantial. Despite this, we are mindful that circumstantial evidence is as probative as direct evidence and can, alone, provide a sufficient basis to establish a defendant's guilt. *Carrizales*,

8

414 S.W.3d at 742 (citing *Hooper*, 214 S.W.3d at 13); *Lee*, 676 S.W.3d at 915. Here, the evidence included, but is not limited to: (1) Appellant was seen running away from the Prius after it crashed into a tree; (2) witnesses observed that Appellant was wearing a white muscle-shirt and holding a black hoodie; (3) Appellant was seen returning to the Prius, reaching through an open window and removing a bag, and then fleeing; (4) Appellant fled and went to Castillo's home and asked her for a ride because he needed to "get away"; (5) as he fled, Appellant jumped into Knox's Yukon and told him to "[d]rive, just drive"; (6) Dr. Parsons testified that Turner was shot three times, with two different caliber weapons, and his head wound was caused by a medium-sized caliber weapon—likely a 9mm firearm; (7) a black bag was recovered from Castillo's home and a 9mm Springfield XD firearm and magazines were inside the bag; (8) a 9mm casing was found next to Turner's body; (9) forensic analysis determined that the 9mm casing found near Turner's body had been fired from the 9mm firearm recovered from Castillo's home; (10) DNA found on the 9mm firearm (blood stains) indicated that Appellant was a possible contributor to the DNA profile found on it and that at some point Appellant and Turner were near this weapon; (11) forensic analysis confirmed the presence of Turner's blood and gunshot primer residue particles on the black hoodie that Appellant was carrying which indicated that the black hoodie could have been near a firearm when the firearm was discharged; and (12) after his arrest, Appellant called Mobey from jail and inquired about the firearms that were used to murder Turner.

The jury, as in all cases, was free to judge the credibility and weight of all the evidence presented. *See Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. If the evidence conflicts, we must presume that the jury resolved any conflicts in favor of the verdict, and we defer to the jury's determination in that regard. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

9

Viewing the evidence in the light most favorable to the jury's verdict, as we must, we conclude that the record contains evidentiary puzzle pieces that a rational trier of fact could have carefully fit together, *see Flowers v. State*, 220 S.W.3d 919, 923 (Tex. Crim. App. 2007) ("The trier of fact fits the pieces of the jigsaw puzzle together and weighs the credibility of each piece."), logically inferred, and found beyond a reasonable doubt that the cumulative force and effect of the evidence, circumstantial or otherwise, established that Appellant was guilty of the offense of murder, either as the primary actor or a party to the offense. *See Walter v. State*, 581 S.W.3d 957, 976 (Tex. App.—Eastland 2019, pet. ref'd) (the evidence was sufficient to convict the defendant of murder as a primary actor and a party); *Henderson v. State*, No. 11-22-00031-CR, 2024 WL 269627, at \*5 (Tex. App.—Eastland Jan. 25, 2024, no pet.) (mem. op., not designated for publication) (same); *Zapata v. State*, No. 11-22-00213-CR, 2023 WL 6322063, at \*5–6 (Tex. App.—Eastland Sept. 29, 2023, no pet.) (mem. op., not designated for publication) (same, defendant convicted of deadly conduct).

Accordingly, we overrule Appellant's first issue on appeal.

### III. *Time Payment Fee Assessment*

In his second issue, Appellant contends that the trial court erroneously assessed a time payment fee of $15 against him. The State agrees, as do we.

Article 102.030 permits the assessment of a $15 time payment reimbursement fee if a defendant "pays any part of a fine, court costs, or restitution, or another reimbursement fee, on or after the 31st day after the date on which a judgment is entered assessing the fine, court costs, restitution, or other reimbursement fee." CRIM. PROC. art. 102.030(a)(2) (West Supp. 2025). However, in *Dulin v. State*, the Court of Criminal Appeals held that "[t]he pendency of an appeal stops the clock for purposes of [a defendant's duty to pay] the time payment fee." 620 S.W.3d 129, 133 (Tex. Crim. App. 2021). Consistent with *Dulin*, Appellant requests that we modify

the district clerk's bill of cost and the trial court's judgment to delete the $15 time payment fee because it was erroneously and prematurely assessed. We agree that such an adjustment is required.

We have the authority to modify and reform judgments when the necessary information is available to do so. TEX. R. APP. P. 43.2(b); *see Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Accordingly, Appellant's second issue is sustained, and the district clerk's bill of cost and the trial court's judgment are modified to delete the prematurely assessed $15 time payment fee, without prejudice to this fee being assessed later if, more than thirty days after the issuance of the appellate mandate, Appellant has failed to completely pay any assessed court costs or fees that he owes. *See Dulin*, 620 S.W.3d at 133; *Cadena v. State*, No. 11-22-00225-CR, 2023 WL 8459093, at *9 (Tex. App.—Eastland Dec. 7, 2023, no pet.) (mem. op., not designated for publication).

## IV. *This Court's Ruling*

As modified above, we affirm the judgment of the trial court. *See* TEX. R. APP. P. 43.2(b).


W. STACY TROTTER
JUSTICE


July 2, 2026

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.